# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| GREGORY PETERSEN and SUSAN PETERSEN, | Civil No. 09-2850 (JRT/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| TIMOTHY ENGLAND, CHRISTINA ENGLAND, CT COMPANIES LLC, MONEYTREE FINANCIAL LLC, and WELLS FARGO BANK, NA, | |
| Defendants. | |

Jeramie Richard Steinert, **STEINERT P.A.**, 2620 California Street, Minneapolis, MN 55418, for plaintiffs.

Charles F. Webber, Evan A. Fetters, and D. Charles Macdonald, **FAEGRE & BENSON LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402-3901, for defendant Wells Fargo Bank, NA.

Jack E. Pierce, **PIERCE LAW FIRM, P.A.**, 6040 Earle Brown Drive, Suite 420, Minneapolis, MN 55430, for defendants Timothy England, Christina England, and CT Companies LLC.


Plaintiffs Gregory and Susan Petersen (collectively, "plaintiffs") brought this action against defendants Timothy England and Christina England (collectively, "the Englands"), CT Companies LLC ("CT Companies"), MoneyTree Financial LLC ("MoneyTree"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "defendants"). Plaintiffs allege twelve separate causes of action arising out of several transactions related to the financing of their home. Wells Fargo filed a motion to

partially dismiss certain claims against Wells Fargo and against all defendants. For the reasons discussed below, the Court grants in part and denies in part the motion.

## BACKGROUND

### I. PLAINTIFFS' HOME PURCHASE, MORTGAGES, AND DEFAULT

On July 17, 1997, plaintiffs purchased a residential lot located at 7077 Old Viking Boulevard in Anoka, Minnesota (the "Property"). (Compl. ¶¶ 11-12, Docket No. 1.) Plaintiffs built a home on the lot, borrowing $222,300 from American Loan Centers to construct the house. (*Id.* ¶ 14.) Plaintiffs secured that loan by executing a first mortgage on the Property in favor of American Loan Centers – which later assigned its interest to Bank One on December 20, 1999. (*Id.*) On March 15, 2000, plaintiffs executed a second mortgage on the Property in favor of CreditAmerica Savings Company ("Credit America") as security for a promissory note totaling just over $23,000. (*Id.* ¶ 15.)

By late 2003, plaintiffs were delinquent on both mortgages, and Bank One foreclosed its first mortgage on the Property. (*Id.* ¶¶ 16-18.) On February 5, 2004, a sheriff's sale was held in which the highest bid was $263,366.17. (*Id.* ¶ 18.) Upon sale of the home, a six-month redemption period commenced that ended on or about August 5, 2004. (*See id.* ¶ 18.) On April 20, 2004, American National Bank, which held the second mortgage as CreditAmerica's successor-in-interest, filed a notice of intent to redeem the Property. (*Id.* ¶ 19.)

## II.     THE AUGUST 5, 2004 TRANSACTION

In Spring 2004, during the six-month redemption period, plaintiffs contacted defendant MoneyTree to determine if MoneyTree could help plaintiffs avoid foreclosure and to obtain financing.  (*Id.* ¶¶ 20-23.)  MoneyTree represented that it could arrange for financing through investors in an arrangement whereby plaintiffs would give their deed to the Property to the investors and the investors would sell the Property back to plaintiffs on a contract for deed with monthly payments.  (*Id.* ¶ 26.)  Plaintiffs agreed to the arrangement.  (*Id.* ¶ 27.)  Plaintiffs allege that at the time, their Property was valued at $400,000, resulting in approximately $100,000 in equity in the home.  (*Id.* ¶ 24.)

The closing was arranged for August 5, 2004 (the "8-5-04 Transaction"), the final day of the redemption period.  (*Id.* ¶ 33.)  At the closing, plaintiffs executed a warranty deed to Timothy England, representing that plaintiffs were receiving $400,000 in consideration.  (*Id.* ¶ 39.)  Plaintiffs allege that they did not receive notice of their right to rescind the transaction or receive any disclosures required by the federal Truth in Lending Act ("TILA").  (*Id.* ¶¶ 36, 38.)  Timothy England then proceeded, using borrowed funds, to pay off the first and second mortgages, thereby acquiring the rights to the Property.  (*Id.* ¶¶ 45-49.)  An August 12, 2005 Anoka County Certificate of Redemption indicates that Timothy England remitted $295,968.64 to the sheriff for the foreclosure sale that occurred on February 5.  (*Id.* ¶ 49.)  The Englands thereafter transferred the Property by quit claim deed to CT Properties, which plaintiffs allege is the Englands' closely held company.  (*Id.* ¶ 51.)

On October 1, 2004, plaintiffs signed a contract for deed with CT Companies that required them to repay $360,000 at 8.8% interest per annum. (*Id.* ¶ 53.) Plaintiffs allege that the 8.8% interest rate does not reflect the actual rate because the difference between the $360,000 principal and the $295,968.64 certificate of redemption is comprised entirely of finance charges. (*Id.* ¶ 55.) Plaintiffs allege that the contract for deed therefore included "unconscionable" finance charges in excess of 8% of the sales price, which required CT Companies to comply with additional requirements outlined in the Home Ownership Equity Protection Act ("HOEPA"). (*Id.* ¶ 56.) Plaintiffs allege that, CT Companies, the Englands, and MoneyTree all failed to comply with HOEPA and failed to provide plaintiffs with documents required under the TILA, notices of cancellation required by Minn. Stat. § 325N.14, and a contract for deed that complies with the requirements under Minn. Stat. § 325N.10–.18. (*Id.* ¶ 59.) Plaintiffs do not allege that Wells Fargo played any direct role in the 8-5-04 Transaction.

## III.    THE DECEMBER 9, 2005 TRANSACTION

Plaintiffs later "realized that they would be better served getting out of the contract for deed and into traditional financing." (*Id.* ¶ 67.) The Englands suggested that plaintiffs contact Mortgage Quest Plus, L.L.C. ("Mortgage Quest"), which ultimately arranged financing for plaintiffs through Finance America LLC ("Finance America"). (*Id.* ¶¶ 69-72, 78.) Plaintiffs allege that at the time, the Property appraised for $499,000. (*Id.* ¶ 74.)

On December 9, 2005, plaintiffs closed with Finance America (the "12-9-05 Transaction"). (*Id.* ¶ 75.) Plaintiffs signed a promissory note to pay Finance America a principal amount of $382,000, which was higher than the remaining balance on the contract for deed – $356,762.17, not including a $8,113.68 reserve account balance with CT Companies – and executed a mortgage in favor of Finance America to secure the note. (*Id.* ¶¶ 78-79.) Plaintiffs allege that the TILA disclosure statement they received in connection with the 12-9-05 Transaction misstated the actual finance charges for the transaction. (*Id.* ¶¶ 84-86.) Plaintiffs also allege that Finance America, CT Companies, the Englands, and Mortgage Quest fraudulently withheld facts from them regarding accounting of the transaction, finance charges, and other material disclosures. (*Id.* ¶ 91.)

Plaintiffs allege that sometime after the closing on the 12-9-05 Transaction, Wells Fargo "claimed to acquire an interest in the December 9, 2005 promissory note, either as assignee, holder or nominee."[1] (*Id.* ¶ 96.) Plaintiffs eventually defaulted on the December 9, 2005 loan and Wells Fargo held a foreclosure sale on November 14, 2008. (*Id.* ¶ 97.) In July 2009, Wells Fargo commenced an action to evict plaintiffs from the Property, (*see id.* ¶ 100), and on September 21, 2009, Wells Fargo secured a writ of recovery. (*Id.* ¶ 103.) Wells Fargo has voluntarily agreed to refrain from evicting plaintiffs until the claims against Wells Fargo are resolved. (Mem. in Supp. of Wells Fargo's Am. Mot. to Partially Dismiss Pls.' Compl. at 6, Docket No. 12.)

---

[1] Wells Fargo contends that it is "simply the servicer" of plaintiffs' loan, but acknowledges that the Court must assume as true the facts pleaded in the complaint. (Mem. in Supp. of Wells Fargo's Am. Mot. to Partially Dismiss Pls.' Compl. at 6, Docket No. 12.)

## IV.   PLAINTIFFS' CLAIMS

On September 30, 2009, plaintiffs brought this action against defendants in Minnesota state court in Anoka County.  (*See* Compl., Ex. 2, Docket No. 1.)  On October 13, 2009, Wells Fargo removed the action to federal court.  (Docket No. 1.).

Plaintiffs bring twelve causes of action under federal and Minnesota law, all of which arise out of the 8-5-04 Transaction and the 12-9-05 Transaction.  In Count 1, plaintiffs allege that CT Companies, the Englands, and MoneyTree violated the Minnesota Foreclosure Purchaser Statute, *see* Minn. Stat. §§ 325N.10-.18.  (Compl. ¶¶ 105-12, Ex. 2, Docket No. 1.)  In Count 2, plaintiffs allege that CT Companies, the Englands, and MoneyTree violated the Minnesota Consumer Fraud Act, *see* Minn. Stat. § 325F.69.  (Compl. ¶¶ 113-23, Ex. 2, Docket No. 1.)  In Count 3, plaintiffs request that the Court declare the 8-5-04 Transaction an equitable mortgage.  (*Id.* ¶¶ 124-37.)  In Count 4, plaintiffs allege that CT Companies, the Englands, and MoneyTree violated TILA and HOEPA in their conduct relating to the 8-5-04 Transaction.  (*Id.* ¶¶ 138-56.)  In Count 5, plaintiffs allege that Finance America violated TILA, *see* 15 U.S.C. §§ 1602 *et seq.*, in its conduct relating to the 12-9-05 Transaction and that Wells Fargo is liable as an assignee under 15 U.S.C. § 1641(d).  (Compl. ¶¶ 157-68, Ex. 2, Docket No. 1.)  In Count 6, plaintiffs request that the Court declare the 12-9-05 Transaction illegal and declare that plaintiffs are fee title owners of the Property.  (*Id.* ¶¶ 170-88.)  In Count 7, plaintiffs allege that CT Companies, the Englands, MoneyTree, and Wells Fargo violated the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), *see* Minn. Stat.

§ 325D.44.  (Compl. ¶¶ 189-95, Ex. 2, Docket No. 1.)  In Count 8, plaintiffs request that the Court declare the 8-5-04 Transaction and the 12-9-05 Transaction "unconscionable." (*Id.* ¶¶ 196-98.)  In Count 9, plaintiffs bring a claim for common law fraud against all "Defendants."  (*Id.* ¶¶ 199-213.)  In Count 10, plaintiffs seek to rescind the contracts for the 8-5-04 Transaction and the 12-9-05 Transaction with the CT Companies, the Englands, MoneyTree, and Finance America.  (*Id.* ¶¶ 214-17.)  In Count 11, plaintiffs allege a "private cause of action" under Minn. Stat. § 8.31.  (*Id.* ¶¶ 219-21.)  In Count 12, plaintiffs allege that Wells Fargo violated a variety of "standards of conduct" under federal law and Minnesota law.  (*Id.* ¶¶ 223-25.)

On November 10, 2009, Wells Fargo brought an Amended Motion to Partially Dismiss Plaintiffs' Complaint.  (*See* Docket No. 11.)  Wells Fargo moves to dismiss with prejudice Counts 1-4, 8, and 11 as to Wells Fargo and moves to dismiss with prejudice Counts 5, 6, 9, and 10 against all defendants.  (Mem. in Supp. of Mot. to Partially Dismiss Pls.' Compl. at 2, Docket No. 12.)  Wells Fargo does not move to dismiss Counts 7 or 12.  In its brief and at the hearing on the motion, plaintiffs represented that they were not contesting Wells Fargo's motion to dismiss Counts 1-4 as against Wells Fargo.

## DISCUSSION

## I.    STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light

most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001) (per curiam). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed. *Id.* (internal quotation marks omitted).

## II.    WELLS FARGO'S MOTION TO DISMISS

### A.    Rescission of the 8-5-04 Transaction and the 12-9-05 Transaction, and Request for Damages (Count 5 and Count 10)

In Count 5, plaintiffs allege that regarding the 12-9-05 Transaction, Finance America violated TILA by "fail[ing] to provide each Plaintiff with a correct Truth in Lending disclosure, as contemplated by TILA, that correctly disclosed the amount financed, finance charge, and annual percentage rate, which are material disclosures required by 15 U.S.C. § 1638(a)." (Compl. ¶ 165, Ex. 2, Docket No. 1.) Plaintiffs allege that as an assignee under 15 U.S.C. § 1640, Wells Fargo is liable for Finance America's

TILA violations. (*Id.* ¶ 168.) Plaintiffs claim that they "have been damaged," (*id.* ¶ 169), and they are entitled to rescind the 12-9-05 Transaction under 15 U.S.C. § 1635 and Regulation Z, (*id.* ¶ 164). Plaintiffs appear to concede that the statute of limitations bars their TILA rescission claim, (*see id.* ¶ 166), but aver that they "have retained the right of rescission with respect to the extension of credit due to fraudulent concealment," (*id.* ¶ 167).

In Count 10, plaintiffs give notice of their intent to cancel and rescind any contract with CT Companies, the Englands, and MoneyTree pursuant to Minn. Stat. § 325N.13 – the Minnesota Foreclosure Purchaser statute under which plaintiffs allege a violation in Count 1 – and pursuant to TILA. (*Id.* ¶ 215.) Plaintiffs also give notice of their intent to cancel and rescind any contract with Finance America pursuant to TILA. (*Id.* ¶ 216.) Wells Fargo asks the Court to dismiss with prejudice Counts 5 and 10 against all defendants. Wells Fargo argues that the statute of limitations bars plaintiffs' rescission claim and claim for damages. Wells Fargo also argues that plaintiffs did not plead fraudulent concealment with particularity and therefore have not adequately pleaded that the statute of limitations is equitably tolled.

### 1. Statute of Limitations for Rescission

Under TILA, a borrower's "right of rescission shall expire **three years after the date of consummation of the transaction** . . . , notwithstanding the fact that the information and forms required under this section or any other disclosures required under

this part have not been delivered to the [borrower]."[2]  15 U.S.C. § 1635(f) (emphasis added); *see also* 12 C.F.R. § 226.15(a)(3).  Assignees may be subject to an individual's right to rescind to the same extent as the original creditor.  *See* 15 U.S.C. § 1641(a)-(c).

A transaction is consummated for the purposes of TILA when "'a consumer becomes contractually obligated on a credit transaction.'"  *O'Brien v. Aames Funding Corp.*, 374 F. Supp. 2d 764, 766 (D. Minn. 2005) (quoting 12 C.F.R. § 226.2(a)(13)).  "[T]he doctrine of fraudulent concealment could equitably toll the limitations period . . . such that the period would begin to run, not at the time that the credit transaction was consummated, but from the date on which the borrower discovers or has a reasonable opportunity to discover the fraud involving the complained of TILA violation."  *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999) (internal quotation marks omitted).  To establish fraudulent concealment, plaintiffs must show "1) that the Defendant engaged in a course of conduct to conceal evidence of the Defendant's alleged wrongdoing; and 2) that the Plaintiff failed to discover the facts giving rise to her claim despite her exercise of due diligence."  *Id.*  "The Courts, which have applied the doctrine of fraudulent concealment to TILA claims that are directed at alleged nondisclosures, have uniformly held that fraudulent conduct, beyond the nondisclosure itself, is necessary

---

[2]  With respect to plaintiffs' claim in Count 1 under the Minnesota Foreclosure Purchaser Statute, plaintiffs' right to rescind the contracts underlying the 8-5-04 Transaction expired at "8:00 a.m. on the last day of the period during which the foreclosed homeowner has a right of redemption," regardless of whether the foreclosure purchaser complied with Minnesota statutes. Minn. Stat. § 325N.13(a).  Thus, plaintiffs' right to rescind under Minnesota law expired over five years before plaintiffs filed this action.  In addition, plaintiffs have not pleaded any basis on which Wells Fargo could be liable for other defendants' conduct relating to the 8-5-04 Transaction.

to permit the [limitations] period to be equitably tolled." *Id.*; *see also Ripplinger v. Amoco Oil Co.*, 916 F.2d 441, 442 (8th Cir. 1990) ("[F]raudulent concealment . . . requires an act of affirmative misrepresentation over and above the acts creating the alleged cause of action.").

Wells Fargo argues that plaintiffs became contractually obligated with respect to the 8-5-04 Transaction no later than October 1, 2004, when plaintiffs alleged they signed the contract for deed.[3]  Thus, any right of rescission plaintiffs had with respect to the 8-05-04 Transaction would lapse on October 1, 2007, three years after plaintiffs executed the contract for deed and two years before plaintiffs commenced the lawsuit.  Wells Fargo argues that plaintiffs became contractually obligated with respect to the 12-9-05 Transaction on December 9, 2005, when plaintiffs closed on the mortgage, promissory note, and other loan documents with Finance America.  Thus, any right of rescission plaintiffs had with respect to the 12-9-05 Transaction would lapse on December 9, 2008, three years after plaintiffs closed with Finance America and ten months before plaintiffs filed the complaint.

Plaintiffs do not argue that the statute of limitations would generally bar their actions for rescission and damages under Count 5 and Count 10.  (*See* Mem. in Opp'n to Wells Fargo's Am. Mot. to Partially Dismiss Pls.' Compl. at 10, Docket No. 15.)  Rather, plaintiffs contend it is unclear the transactions were ever consummated.  That is,

---

[3] Wells Fargo asserts that a right of rescission would not apply to a contract for deed, but because plaintiffs allege that the 8-5-04 Transaction was an equitable mortgage, the Court assumes that allegation as true and assumes that the transaction carried with it a right to rescind under the TILA.  (Mem. in Supp. of Mot. to Dismiss at 13, Docket No. 12.)

plaintiffs suggest they did not become contractually obligated to defendants because the transactions and the consideration for the transactions were illegal. Plaintiffs' argument is unpersuasive. If the transactions were never consummated, plaintiffs would not be entitled to bring TILA claims for rescission. Indeed, plaintiffs would not be contractually obligated to perform under the transactions. *Cf. O'Brien*, 374 F. Supp. 2d at 767 ("[A] contractual obligation arises when a loan contract clearly binds the consumer, even if the contract includes a condition precedent to the lender's performance.").

Assuming that the transactions were consummated for TILA purposes, plaintiffs allege and argue that defendants' fraudulent concealment tolled the statute of limitations. (*See* Compl. ¶ 167, Ex. 2, Docket No. 1.) Plaintiffs' claim for fraudulent concealment fails as a matter of law. First, plaintiffs fail to plead the fraudulent concealment claim with particularity as required under Federal Rule of Civil Procedure 9(b). "[F]ederal procedural law requires that allegations of fraud, including fraudulent concealment for tolling purposes, be pleaded with particularity." *Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). Plaintiffs' cursory averment that they "have retained the right of rescission with respect to the extension of credit due to fraudulent concealment" is inadequate under Rule 9(b).

In addition, plaintiffs do not plead facts elsewhere in the complaint establishing fraudulent concealment. Courts addressing nondisclosure allegations under TILA require that plaintiffs plead fraudulent conduct beyond the nondisclosure itself to establish a claim for equitable tolling. *Evans*, 39 F. Supp. 2d at 1184. In a similar context, the Fifth Circuit held:

> To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct. [Plaintiff] has not alleged that [Defendant] concealed material facts, nor could he. The causative fact was [Defendant's] failure to disclose the required information when the loan was concluded. . . . [Plaintiff] knew or should have known of this failure as of that date.

*Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633-34 (5th Cir. 1986) (citation omitted).

Plaintiffs have not pleaded that defendants engaged in any fraudulent conduct to "conceal" the fact that they did not provide plaintiffs with required disclosures. Accordingly, the Court grants Wells Fargo's motion to dismiss Count 5 and Count 10 to the extent those causes of action seek to rescind the 8-5-04 Transaction and the 12-9-05 Transaction. The Court dismisses those claims for rescission under TILA without prejudice and grants plaintiffs leave to amend and plead with particularity their claim for fraudulent concealment as a means to equitably toll the statute of limitations.

### 2.      Statute of Limitations for Damages

In Count 5, plaintiffs allege that they have suffered damages as a result of the TILA violations and that Wells Fargo is liable for those damages as an assignee under 15 U.S.C. § 1640. The limitations period for actions to recover damages under the TILA is one year from the date of the alleged violation. 15 U.S.C. § 1640(e). Here, the alleged violation in Count 5 occurred on December 9, 2005, when plaintiffs allegedly did not receive accurate disclosures to which they were entitled. Thus, plaintiffs had until December 9, 2006, to bring a claim for money damages, which was one year after the 12-9-05 Transaction and three years before this complaint was filed. As discussed above,

plaintiffs have not adequately pleaded a basis for equitable tolling, and the Court grants defendants' motion to dismiss Count 5 to the extent it seeks damages. The Court dismisses the claim for damages without prejudice and grants plaintiffs leave to amend to plead a basis for equitable tolling with particularity.

### B. **Violation of the Minnesota Usury Statute** (Count 6)

In Count 6, plaintiffs allege that Finance America, CT Companies, and the Englands[4] violated Minnesota Statute §§ 334.01 and 58.137 in connection with closing on the 12-9-05 Transaction. (Compl. ¶¶ 170-88, Ex. 2, Docket No. 1.) Plaintiffs allege that those defendants violated § 334.01 because the promissory note for the 12-9-05 Transaction enabled the defendants to "directly or indirectly" take or receive "money in excess of $8 on $100 for one year." (Compl. ¶ 177, Ex. 2, Docket No. 1.) Plaintiffs allege that the defendants violated § 58.137 by including excessive "lender fees" in the principal amount of the promissory note for the 12-9-05 Transaction. (*Id.* ¶ 184, 186.) Plaintiffs ask the Court to declare (1) that those defendants violated the Minnesota Statutes; (2) that plaintiffs are fee title owners of the Property; and (3) that plaintiffs have no further obligation to any defendants. (*Id.* ¶¶ 186-88.)

Minnesota Statute § 334.01 provides: "No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than

---

[4] Plaintiffs also allege that MortgageQuest is liable under these statutes, but plaintiffs do not name MortgageQuest as a defendant in this suit. (*See* Compl. ¶ 178, Ex. 2, Docket No. 1.)

$8 on $100 for one year." Minn. Stat. § 334.01 subd. 1. Section 58.137 states: "A residential mortgage originator making or modifying a residential mortgage loan to a borrower located in this state must not include in the principal amount of any residential mortgage loan all or any portion of any lender fee in an aggregate amount exceeding five percent of the loan amount." Minn. Stat. § 58.137 subd. 1.

Wells Fargo argues that the Court should dismiss Count 6 as to Wells Fargo because the complaint does not allege that Wells Fargo violated either statute and because Wells Fargo did not acquire an interest in the promissory note for the 12-9-05 Transaction until after plaintiffs closed on that transaction. (*Cf.* Compl. ¶ 96, Ex. 2, Docket No. 1 ("Wells Fargo thereafter claimed to acquire an interest in the December 9, 2005 promissory note, either as an assignee, holder or nominee.").) The Court agrees. The complaint does not allege that Wells Fargo violated either statute, and does not mention Wells Fargo in Count 6. In addition, Wells Fargo did not "acquire an interest" in the 12-9-05 Transaction promissory note until after the relevant defendants and plaintiffs closed on that transaction, which set the principal amount and actual per annum interest rate. Plaintiffs have not pleaded facts from which the Court could draw a reasonable inference that Wells Fargo is liable for the conduct alleged in Count 6. *See Iqbal*, 129 S. Ct. at 1949.

Wells Fargo also argues that the Court should dismiss Count 6 as to all defendants because plaintiffs request a remedy – the voiding of the 8-5-04 Transaction and the 12-9-05 Transaction – that is not permitted by statute. Because such a remedy would affect

Wells Fargo's interest in the Property, Wells Fargo asserts that it has standing to challenge Count 6 as to all defendants.

Minnesota's Usury Statute permits a Court to void a usurious contract, *see* Minn. Stat. §§ 334.03 and 334.05, but also states:

> Notwithstanding any law to the contrary, except as stated in section 58.137, . . . no limitation on the rate or amount of interest, points, finance charges, fees, or other charges applies to a loan, mortgage, credit sale, or advance made under a written contract, signed by the debtor, for the extension of credit to the debtor **in the amount of $100,000 or more**[.]

Minn. Stat. § 334.01 subd. 2 (emphasis added). Because plaintiffs plead that the 12-9-05 Transaction involved the extension of $382,000 credit, the transaction is outside the reach of the Usury Statute.

The Usury Statute states that Minnesota Statute § 58.137 applies regardless of the size of the loan, and Minnesota Statute § 58.18 provides the remedies for § 58.137. *See* Minn. Stat. § 58.18 subd. 1. Section 58.18 allows a party to recover actual or consequential damages, "statutory damages equal to the amount of all lender fees included in the amount of the principal of the residential mortgage loan," punitive damages, and costs and reasonable attorney fees. *Id.* The statutes, however, do not permit a court to void the promissory note and mortgage, and plaintiffs do not offer any legal support for the claim that the Court may void the 12-9-05 Transaction.

The Court notes, however, that Count 6 does not fail as a matter of law in its entirety. Plaintiffs allege that defendants' conduct as alleged in Count 6 has caused them to suffer damages. (Compl. ¶ 185, Ex. 2, Docket No. 1.) Plaintiffs may recover damages under the applicable Minnesota statutes.

In sum, the Court dismisses with prejudice Count 6 as to all defendants to the extent that plaintiffs ask the Court to void the 12-9-05 Transaction. The Court dismisses without prejudice Count 6 as to Wells Fargo. The Court denies Wells Fargo's motion to dismiss Count 6 as to the other defendants to the extent that Count 6 seeks damages permitted by statute.

### C.    Unconscionability (Count 8)

In Count 8, plaintiffs ask the Court to declare the 8-5-04 Transaction and the 12-9-05 Transaction unconscionable. Wells Fargo argues that Count 8 must be dismissed as to Wells Fargo because the complaint does not allege any facts that Wells Fargo acted unconscionably and the complaint does not allege facts suggesting that the 12-9-05 Transaction was unconscionable. (Mem. in Supp of Wells Fargo's Am. Mot. to Partially Dismiss Pls.' Compl. at 10-11, Docket No. 12.) "A contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Vierkant v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996) (internal quotation marks omitted).

Specifically, Count 8 alleges:

> 196.    Plaintiffs re-allege all prior paragraphs of their Complaint.

> 197.    Defendants have purported to claim a profit as a result of the above-described equity-stripping scheme that is both procedurally and substantively unconscionable.

> 198.    Plaintiffs request that the August 5, 200[4] transaction and December 9, 2005 transaction each be declared unconscionable.

(Compl. ¶¶ 196-98, Docket No. 1.)

Given plaintiffs' conclusory allegations, plaintiffs' "unconscionability" claim against Wells Fargo is not plausible on its face and must be dismissed. Plaintiffs allege no facts from which the Court could conclude that Wells Fargo acted in an unconscionable manner regarding the 12-9-05 Transaction.

Plaintiffs argue that Wells Fargo's motion to dismiss Count 8 should be denied because Wells Fargo is an assignee of a mortgage and is subject to claims or defenses that plaintiffs have against the original creditor for the 12-9-05 Transaction, Finance America. (Mem. in Opp'n to Wells Fargo's Am. Mot. to Partially Dismiss Pls.' Compl. at 9, Docket No. 15.) An assignee of a HOEPA loan is subject to "all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641(d). The assignee-liability provision only applied to a "civil action for a violation of [15 U.S.C. §§ 1601 *et seq.*] or proceeding under [15 U.S.C. § 1607]." 15 U.S.C. § 1641(a). As the Court concludes above, however, plaintiffs' claims under TILA as pleaded in Count 5 or Count 10 are barred by the statute of limitations and plaintiffs have not adequately pleaded equitable tolling. Thus, there appears to be no basis on which to hold Wells Fargo liable for Finance America's allegedly unconscionable actions regarding the 12-9-05 Transaction. Accordingly, the Court dismisses Count 8 without prejudice and grants plaintiffs leave to amend.

### D.    Common Law Fraud (Count 9)

In Count 9, plaintiffs bring a claim for common-law fraud, alleging *inter alia* that "Defendants" made misrepresentations to plaintiffs about the nature of the 8-5-04

Transaction and the 12-9-05 Transaction. (Compl. ¶¶ 200-12, Ex. 2, Docket No. 1.)

Wells Fargo argues that the Court should dismiss Count 9 as to all defendants because

plaintiffs do not plead that claim with particularity. Specifically, Wells Fargo contends

that plaintiffs fail to plead Count 9 with particularity because the allegations "simply

lump the defendants together and attribute the alleged fraud to 'defendants' without

differentiating between them or explaining which defendant did or said what. For

example, the first <u>ten</u> substantive paragraphs in Count 9 begin with the word

'Defendants,' and allege fraud with respect to 'Defendants.'" (Mem. in Supp. of Wells

Fargo's Mot. to Partially Dismiss Pls.' Compl. at 19, Docket No. 12.)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with

particularity." "Circumstances include such matters as the time, place and contents of

false representations, as well as the identity of the person making the misrepresentation

and what was obtained or given up thereby." *Commercial Prop. Inv., Inc. v. Quality Inns

Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal quotation marks omitted). Courts

have described this standard as requiring the plaintiff to plead the "who, what, where,

when, and how" of the fraud. *See, e.g.*, *Great Plains Trust*, 492 F.3d at 995 (internal

quotation marks omitted).

"Rule 9(b) does not allow a complaint to merely lump multiple defendants

together but require[s] plaintiffs to differentiate their allegations when suing more than

one defendant . . . and inform each defendant separately of the allegations surrounding

his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th

Cir. 2007) (alteration in original) (internal quotation marks omitted). In particular, plaintiffs' complaint fails to specify which defendants were responsible for the alleged actions, and fails to "inform each defendant of the nature of [its] alleged participation in the fraud." *Carlson v. A.L.S. Enters., Inc.*, Civ. No. 07-3970, 2008 WL 185710, at *4 (D. Minn. Jan. 18, 2008) (alteration in original) (internal quotation marks omitted). (*See, e.g.*, Compl. ¶ 209 ("Defendants intentionally induced Plaintiffs to sign a warranty deed and other documents by intentionally and falsely representing that a contract for deed was not yet drafted or available because funds took weeks for wiring in such situations.").) Although plaintiffs define which defendants are allegedly liable in their other claims and allegations of facts, plaintiffs' subsuming of alleged parties into a single category of "defendants" in Count 9 does not meet Rule 9(b)'s particularity requirements in these circumstances: there are numerous defendants named in the complaint, and each allegedly has a unique role or no role in one or both of the transactions at issue. *Cf. Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'."). In particular, Count 9 fails to identify the fraudulent actions for which Wells Fargo is allegedly liable. Accordingly, the Court dismisses Count 9 without prejudice as to all defendants and grants plaintiffs leave to amend.

## F. **"Private Right of Action"** (Count 11)

In Count 11, plaintiffs bring a cause of action under Minn. Stat. § 8.31. Plaintiffs "re-allege all prior paragraphs of their Complaint," recite the language from Minnesota

Statute § 8.31, and assert that a private right of action under the statute is in the public interest. (Compl. ¶¶ 218-21, Ex. 2, Docket No. 1.) Wells Fargo argues that Count 11 is not a claim for relief and "merely quotes Minn. Stat. § 8.31, which provides a private right of action for violation of statutes that [plaintiffs] invoke in this case." (Mem. in Supp. of Wells Fargo's Mot. to Partially Dismiss Pls. Compl. at 11-12, Docket No. 12.) Wells Fargo asks the Court to dismiss Count 11 because it is not a claim for relief and is "subsumed by the counts of the Complaint that are based on substantive statutes." (*Id.* at 12.)

Plaintiffs' method of pleading renders the cause of action in Count 11 inexplicable. Plaintiffs argue that they have a private right of action under Minnesota Statute § 8.31, which is entitled "Additional duties of attorney general," but plaintiffs do not clearly plead § 8.31's relevance in the context of the overall complaint. Indeed, the Court is unable to review Count 11 under *Iqbal* because there is no clear allegation that permits the Court to determine whether a plausible claim for relief has been pleaded. Accordingly, the Court dismisses without prejudice Count 11 as to all defendants. The Court grants plaintiffs leave to amend and, should plaintiffs elect to do so, the Court expects that plaintiffs will more clearly explicate § 8.31's role in the complaint.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1.    Wells Fargo's Amended Motion to Partially Dismiss Plaintiffs' Complaint [Docket No. 11] is **GRANTED in part** and **DENIED in part** as follows:

    a.    Counts 1, 2, 3, and 4, as those claims relate to Wells Fargo, are **DISMISSED with prejudice** .

    b.    Counts 5, 9, 10, and 11, as those claims relate to all defendants, are **DISMISSED without prejudice**.

    c.    Count 6, as it relates to all defendants and to a request that the Court enter a judgment voiding the 12-9-05 Transaction, is **DISMISSED with prejudice**.    Count 6, as it relates to Wells Fargo and to a request for damages, is **DISMISSED without prejudice**.

    d.    Count 8, as that claim relates to Wells Fargo, is **DISMISSED without prejudice.**

    e.    Wells Fargo's motion is **DENIED** in all other respects.

2.    Plaintiffs may file an amended complaint within thirty (30) days of the filing of this order.

DATED:   September 30, 2010
at Minneapolis, Minnesota.

_____s/ John N. Tunheim_____
JOHN R. TUNHEIM
United States District Judge